Our first case is King v. City of New York. May it please the court. When the defendants punished and expelled Andrew King from the New York City Council, they not only silenced King, they silenced the residents, all the residents of the 12th District of the New York City Council. Long ago, the founders of our system of government warned that democracy is threatened when a majority faction misuses the levers of government to silence or exclude a minority faction. That warning applies with equal force today in this case. In fact, the Supreme Court in the Bond decision and this court in the Velez decision have both firmly established that these core principles of representative democracy must be and should be protected by the federal courts. The lower court did not faithfully adhere to those core principles and it did not faithfully adhere to the standard of review on a motion to dismiss a complaint, which the court fully knows well. Counsel, may I ask you, because I don't want too much time to go by, I have a very specific question about one of the alleged adverse actions, the fine, the $15,000 fine. And this is really perhaps a factual question. Is it your understanding that that is still a live issue or that the city has affirmatively represented that it has abandoned its right to seek collection of that fine? It's not on the record as this court has it today, but my understanding is that he was fined $15,000 while he was negotiating to pay that back. They charged him with failing to pay it. And then one of the disciplines against him was failure to pay. No, no, no. To my knowledge, there's. At present. Yes. I don't know. You don't know. That's fine. I'll ask your adversary that. Thank you. I'm just trying to figure out if that's a live issue. But the failure to pay it was a reason why they expelled him from the city council, right? Well, I mean, I don't think that was a real reason because. Well, that was in the resolution. Like they said, because you didn't pay the fine, we're expelling you. Yes. Consequences attached to his failure to pay. So it does seem like they were serious about it. Well, I mean, what's in the record is that he was fined. He was suspended. He lost $12,000 of salary for that month that he was suspended. And then when he returned, he was shortly thereafter charged with numerous other things. And one of the charges was you didn't pay this fine. And I believe it's alleged in the complaint that he was trying to negotiate a resolution of that when they bought the new. Your First Amendment claim, so the city makes this argument about how far apart the discipline was from the conduct. So how soon after Councilman King made the comments that you think he was retaliating against Ford did the retaliation start? Well, I think that if you just look at it from a temporal point of view, it doesn't add up. And I think there are many cases where this court has said too much time. But this case is not about a temporal connection. This case is about the defendant saying we are punishing you because of your anti-gay statements that you have made. So when did they say that? So they said that Councilman Van Bremer said that at the hearing? I'm sorry. You're saying that Councilman Van Bremer said that at the hearing? Well, not only did Councilman Van Bremer say that explicitly at the hearing, and it was because of these detestable comments, but one of the charges was that he made anti-gay remarks. Yeah, so I asked about that. So, right, so they do say that because he said that he fines the gay pride, the depiction of the gay pride march offensive, that is the reason why they're suspending him. That was one of the charges they brought up against him. The other charges say that they're doing it because he said that in a harsh way and it amounted to harassment. So is it permissible to discipline him for harassment? No, I don't think so. He has a constitutional right as a citizen to make statements about what his personal opinion is. And this is not just a sort of casual thing, Judge. This is an elected official who has a Twitter account, which everybody knows, everybody pays attention to, and somebody posts something that he finds- Oftentimes harassment takes the form of speech, right? If it's harassing and directed at a particular individual, I guess you'd have to say that the speech here was not, that here was just discipline because of his viewpoint as opposed to something he did that's directed at a particular individual. Well, my point about that particular allegation is that it's in their charge that you made statements that were anti-gay. And we are charging you with making those statements. There is- that's evidence of animus right there. So you need not get into a discussion about- I see I'm over my time. I apologize. You're not. Okay. Thank you. My point is that you have direct evidence that the lower court didn't even address, which was they made- they charged him with making anti-gay statements. Of course, they can argue to a fact finder that this was really not this, it was that. But in terms of a pleading standard, and it's not really in dispute that there was a charge- So you're saying that maybe it was harassment, but it plausibly was about his viewpoint, and at least on a motion to dismiss, it's plausible that they're judging him because of his viewpoint. Respectfully, Your Honor, no. It was not harassment. You have a politician who has staked a position on various issues that are hotly debated, and one of his aides accidentally or otherwise posts something that he finds offensive about the gay pride. I don't know if you're familiar with gay pride, but it has an extensive history in this city. And so he was upset that one of his assistants did something that undercut him in a very public way, and he recommends his assistant for making that kind of mistake. I don't see how a rational jury could conclude that he wasn't perfectly within his right to recommend- Can you just address the district court focused on the overwhelming vote in the city council? And at heart, the district court's analysis is about the plausibility of these allegations. So the city council votes 48 to 2 to expel him. The charge is quite serious, including solicitation of a kickback with city funds. Yes. And there's an overwhelming vote in the context of an investigation of serious charges. The district court concludes at most you're pointing to the fact that some small number may have been opposed to some of the views that he's taken. But there's no plausible allegation that this was an action undertaken in response to his political views as opposed to his own conduct. Thank you, Your Honor. I'd like to respond to that. The fact that the vote was overwhelming doesn't prove that the allegations were implausible. What it proves is the power of the majority faction. In Powell- What are the allegations that suggest that such a faction existed? It's throughout the complaint that the LGBT caucus, which is an official organ of the city council, just like other numerous caucuses, has been in control of the speaking role at the city council for many, many years, throughout his king's entire tenure. Those are the allegations. I don't think there's really any genuine dispute that this was a significant force in the city council. You've got to remember, one of the specific- So is your allegation that actually the majority of the city council thought that the charges against him were false, and they voted for it anyway because they were intimidated? I think that the majority faction within the city council set him up with a series of false, completely scandalous, and politically- I guess I have a question about that. So let's say that some number of council members did. I understand you have the allegations that people manufactured charges against him. But if the majority of the city council, in fact, believes the charges, and that's the basis on which they expel him from the body, is that still First Amendment retaliation? Of course. So in Velez, we said that the other board members who had manufactured a charge against somebody they wanted to expel from the board, that that conduct was not actionable, that the only thing that's actionable is the conduct by the authority that can remove the person from the board. I agree with that. So what do we do with that kind of a scenario? Let's say there are a few people who do manufacture charges against him. At this stage, we would credit those allegations. But doesn't it also have to be plausible that the people who actually had the power to remove him and took the vote to remove him also thought it was fraudulent? Excuse me, but Velez said that the board members that set him up didn't have any authority and didn't have any power, and that's why a claim was not stated against him. The defendants in this action all had power and all had authority to take the action that they did, and that's the allegation. So you think it's different because they could, but of course they don't have the power to do it themselves, right? They have to persuade a majority of the city council. Yes, that's absolutely right. And in Bond and in Powell, you had vast majorities. In Powell, I think it was like 280 representatives said, no, you can't come in, one abstention. In Bond, it was 183 to 2. In this case, it was 48 to 2. The other dissenter was the other victim of the backlash against making anti-gay remarks. That was Reverend and council member Ruben Diaz from the 18th district. Okay, so this all happened in the same year. The people who were in control of the city council were on a rampage, and only this court is going to stop that. They punished Ruben Diaz within days of him making a statement. So you think that the conduct by the individual members on the ethics committee or the people that Mr. King alleges manufactured charges against him, like that is all actionable? Yes, yes. And one of the interesting things, legal questions, that I think the court should address is whether or not- If that is actionable, then I guess you have more temporal proximity, right? Because you allege that Mr. King refused to participate in the ceremony about the Pulse nightclub shooting in 2016, and then it's in 2017 that you say that the scheme started where people were looking into charges against him. His history and his approach to all of these important issues are well documented. The question is, if you just want to focus on temporal proximity, I mean, temporal proximity is used by the courts as a basis for inferring improperly. You said, Valez, that the other members of the board who made accusations against the member of the board they don't like, they also have First Amendment rights. This happens all the time in politics, right? Somebody doesn't like somebody for a few point reasons, and they go after them with charges. So why shouldn't we be limited just to the official action of depriving him of his position? That is a very, very important point that you bring up, which is that- And I recognize this is an important issue for the court, and I'd like to take a few minutes- I know I'm way over, Your Honor. I'd like to take a few minutes to talk about that. The hurly burly, the back and forth, that you did this, you did that, that you expect in the legislative body, absolutely not, does not raise the constitutional issues here. But that's not what happened here. What happened here was you had an elected official representing 175,000 people in a section of the Bronx who was removed from office. And that is the key distinction. What I'm asking about is the allegations that there's some other individual members of the council who tried to assassinate his character or criticize him or dig up charges against him. Why isn't that part of the hurly burly, if those people couldn't remove him on their own? Because the hurly burly is, you didn't vote for me last week on my tax bill, so I am not going to help you on this. That's the sort of thing that you would expect. I think I have that argument. I just have one last question, which is about the New York City Human Rights Law. Yes. So the district court said that Mr. King had not made out a prima facie case of discrimination. And you cite these cases from, that we've said in Title VII, that a plaintiff doesn't have to make out a prima facie case to survive a motion to dismiss. Is that also the ruler of the New York City Human Rights Law? Is that your position? I frankly don't understand the lower court's analysis. Mr. King, what the lower court said is that Mr. King hadn't alleged that he was qualified for the position, and that's why he dismissed this allegation. But the allegation is that he was elected and reelected by an overwhelming majority of people in his district. That is the qualification, the only qualification for office. And so it makes no sense to suggest that Mr. King wasn't qualified for the position. He had the position since 2012. So, I mean, this is not just some ordinary employment case. That's just really a kind of bizarre analysis, respectfully, of the situation. We'll hear from your adversary. I apologize. Good morning, Your Honors. May it please the court, Kevin Osowski on behalf of Bethel Lease. The district court properly dismissed King's amended complaint because it fails to plausibly allege that the city council's nearly unanimous bipartisan votes to discipline and expel him were retaliation for King's anti-LGBTQ views rather than his demonstrated misconduct, including receiving a kickback payment. I think it's important that the court look to what King's amended complaint actually is alleging and assess, as the district court did, how the lack of plausibility there. He's alleging that in eight years on the city council, his only acts of anti-LGBT expression are his failure to participate in a 2016 memorial and these vague references to opposition to LGBTQ legislation between 2012 and 2014. And as a result of that action, he alleges that the LGBTQ council members, past and present, led by Council Member Van Bramer, conspired to oust him from office. He alleges that the LGBTQ faction of the committee, of the council. There are allegations that there are members of the council who didn't like him because of his views on that issue, right? Sure. I mean, that's not implausible that somebody didn't like him. In fact, there are allegations that people make comments that they disapproved of those remarks. I would think your argument is, well, they're allowed to dislike him because of that position. Yeah. Our argument is that what is not plausible is that their dislike for Council Member King. Is what led to the expulsion. Yes. But you don't disagree with the overall framework that if, in fact, that is what led to the expulsion, that would be unconstitutional, right? Like, if the city council had said in the resolution, we don't like what Councilman King has said about gay rights issues and, therefore, we're expelling him from the council, that would be certainly a plausible claim, right? Yes, Your Honor. But the council voted on a resolution that included a number of different charges, several of which were significantly more serious and had nothing to do with his viewpoint. So can I ask about the charge that your opposing council mentioned, which is the charge about him saying that he did not want the depiction of the gay pride march on his Twitter account, and that he opposes it and regards it as offensive? Like, that was one of the charges against him, right? It was. It was among the other charges were permitting another staff member to verbally and physically harass and threaten other staff members, requiring staff to transport him without reimbursing them for gas and maintenance. I know that there are other charges, but there is one charge that does say he said something opposed to gay rights, and that's the reason why, that's one reason why he's being suspended. The charge itself actually alleges that he harassed a staff member. Right, so I mentioned that about harassment, and I'm trying to decide the line between those things. So the reason why it says he harassed a staff member is because the staff member just took his, regarded his expression of his viewpoint as so offensive, right? It's not that he made any comments about that person, right? He expressed his view about the gay pride march. I think the evidence seduced by the Ethics Committee and the Ethics Committee report suggests that the language and the tone that King used when reprimanding the staff member was inappropriate and rose to the level of harassment. But as I said before, it was far from the only allegation. My question is why does it, right? So I think you probably would agree that if, in fact, all the charge said was he said something that's opposed to gay rights, you just agree that that's not a permissible basis for removing him or suspending him from the council. So what is the evidence that shows this is harassment and it is not about his viewpoint, it is about something that he did that is not First Amendment protected? Yeah. So I think the evidence in the record and the evidence that's available as part of the public record is not super clear on the nature of that allegation. But I think when the court views the 2019 decision to discipline King in the context of all of the proven allegations against him, including misusing council funds to take a trip to the Caribbean with his spouse, the one allegation about harassing a staff member for posting something to his Twitter account that he didn't care for sort of falls to the wayside here. So we should say it's harmless, that maybe it was on the basis of First Amendment protected speech, but because there were so many other allegations, we should decide that it doesn't relate? Well, I think that the court needs to look at the plausibility of his allegations in the context of all of the facts that he's alleged. And part of that fact, with respect to the 2019 vote, is that the 2019 vote to discipline him was organized as part of this rampage from the LGBT caucus and pro-LGBT faction of the council. But he has no explanation for the fact that in the same session of council, they voted, Council Member Van Bramer introduced a motion to expel him, and that motion failed. So putting aside that idea that everybody's intimidated by a caucus, I'm just saying, looking at the charges themselves, there is one charge that says we're going to discipline him because of his views on this issue. Isn't that evidence that actually the city council has a body to that position, that that was worthy of discipline, and that's a reason for their suspension? Respectfully, Your Honor, I don't read the allegation in the same way that— Is that because the allegation is harassment? Yes, Your Honor. Harassment of a staff member. Correct, Your Honor. Yeah, but I just asked, so why do we know that it's—so you said that you agreed a moment ago that if, in fact, the city council had said, We don't like his views on these issues, and therefore we're expelling him, that would be a problem. If they just said, we don't like his views on these issues, and therefore we think he's engaged in harassment, that wouldn't be enough just to label it harassment. So I guess—and when I asked you, well, how do we know that this really is harassment and not viewpoint discrimination, you said, we don't know because the record's not clear. I mean, isn't that a reason to say that his allegation is plausible that it was a bad viewpoint? No, Your Honor, because I think in the context of all of the things that he's alleging here, and even beyond the 2019 allegations, there's no similar kind of allegation about anything connected to his viewpoint with respect to the 2020 expulsion vote and the 2020 disciplinary—the charges that were brought by the Ethics Committee. Well, the suspension does remove him from office, right, for a period of 30 days. The 2019 did remove him from—it suspended him from office for 30 days. So, like, even if it were only the reason for the suspension, it would still be actionable. Yes, but I think that in the context of all of the other charges that were brought against him, all of the evidence that was adduced by the Ethics Committee and presented before the full counsel, and the fact that the full counsel voted on those charges, and that that charge was tied to the harassing nature of the speech and not purely about the context of the speech. Maybe the reason we're going, I think, in circles here is you keep coming back to the idea that this fifth charge relating to his speech is not actually retaliation for speech, but it's for harassment. Let's just hypothesize one change in the facts, okay? Let's hypothesize some imaginary fifth charge that we all agreed was retaliation for speech, and we don't even need to posit the facts. So, is it your view that even if that fifth charge was clearly, and we all agreed, retaliation for speech, it still wouldn't matter? I think it wouldn't in the context of these other charges that were rallied against him. So you're saying even if there are five charges, one of them is clearly something that would be impermissible under the First Amendment, it would be retaliation for free speech. It wouldn't matter because there were four other charges, and the vote was an undifferentiated vote by the body, and that we can't know what was the basis for any particular legislator's vote? I think, absent some allegation that would show that he was, whether he was plausibly alleging that that impermissible motive controlled the counsel or led for the counsel's vote. So wouldn't that always allow the legislative body to insulate themselves from a retaliation claim? They could have some things that, again, in our hypothetical situation, all agree is impermissible retaliation based on First Amendment protected speech, that they would always be able to insulate themselves by adding other charges and then voting on the charges in an undifferentiated way. Your Honor, I think we've strayed so far from the actual facts as alleged here. But for analytical neatness, can you just answer my question? Sure. I think in the event that there was an allegation there that was very clearly impermissible and that the counsel voted on that allegation, that would be so different from this case here. Including, in my hypothetical, we have the same first four charges and then we have number five, which again is a hypothetical different charge that we would all agree is impermissible retaliation for First Amendment speech. And again, I want to make sure that I understand your position. Is your position that because the vote was taken in an undifferentiated way as to the five charges, you're never going to be able to plausibly allege retaliation? I think in that situation you may be able to nudge across the line to a plausible allegation. Why? Because I think there may be some factual development that could determine what the purpose of the counsel's vote was. I think here he hasn't met that bar. And that the other, especially given the nature of the other... So you're saying you need something more when you have an undifferentiated vote on five charges, one of which is impermissible and the rest of which are permissible, you're going to need some evidence as to the motivation that the plaintiff is going to have to show that a majority was in fact motivated by the impermissible count? I think you would need to plausibly allege that the motive for the counsel's vote was impermissible. Meaning that a majority, that you'd have to plausibly allege that a majority of the members were motivated by charge number five, which again in our hypothetical is impermissible. Correct. And I think his allegation here is beyond the motivation. It's that the counsel was controlled by this LGBTQ faction of counsel members. And the fact that in the same city council meeting a motion to expel him failed. But in judgment, it's hypothetical. It's just there is an impermissible reason, but it's one of several reasons that the counsel gives for dismissing him. Usually that kind of thing isn't enough to overcome a motion to dismiss, right? If the employer has a mixed motive and says, well, we would have fired him anyway even if we also had. Usually you overcome a motion to dismiss and then the employer would have to show that in defending against the claim, right? Right. So if we have one reason that's impermissible and then a bunch of reasons that are permissible, shouldn't that help, shouldn't that survive a motion to dismiss? I think this court's precedent when it comes to interrogating the legislative action and as this court has discussed in Camacho versus Brandon and Velez, it means that the pleading for allegations of First Amendment retaliation when we're talking about members of the legislature requires greater specificity and greater connectivity between the protected speech and the allegedly impermissible action that is present here. So we should treat it differently from a normal mid-employment case because we're dealing with the plausibility of the allegations should still be greater than we normally would require in a motion to dismiss? I think that the circumstances are unique in such that usually in an employment discrimination standard you're not dealing with a multi-member body making that decision, certainly not dealing with the possibility of permissible retaliatory action based purely on political belief. Can I ask about the New York City human rights law claim? So isn't it a little ridiculous, as opposing counsel suggested, that the district court said he hasn't alleged that he's qualified for the position? I mean, if he was elected to the position, doesn't that mean he was qualified for the position? I think that the district court's determination about his qualifications may have been influenced by some of these allegations of misconduct against him and whether that colors his qualification to hold that office. But I think at base, with respect to his city human rights law claim, he's failed to plausibly allege the causal connection that's required to meet a human rights law claim. And the district court required him to plausibly allege a prima facie case of discrimination? Correct. But we've said, at least in the Title VII context, you don't need to do that to survive a motion to dismiss, right? There just needs to be some kind of plausible inference of discrimination, right? Right, yeah. And generally we say that the New York City human rights law is more liberal than the Title VII standard. So didn't the district court put him to a standard that is higher than a Title VII plaintiff would have? I think that his pleadings are so deficient here that they fail to meet even the standard, the more permissible pleading standard. So you're saying that might have been a mistake, but it doesn't matter? Correct. And in any event, the district court could have, as it did with his Article 78 claim, declined to exercise supplemental jurisdiction over the city human rights law claim. Can I ask you a question I ask opposing counsel? Sure. Just to understand the full scope of issues that are still before us. The fine, the $15,000 fine. I wasn't clear from the briefing. Is the city representing to us that it will not definitively seek enforcement of that fine? It may change nothing about what's happened in the past, but I want to know what's going on now. Do we have a representation from you one way or the other? Sure. So first, let me say that in the amended complaint, he hasn't made any allegation about the $15,000 fine, whether he paid it or not, and whether or not the city council is continuing to seek it. My understanding from discussions with the council for the city council is that the $15,000 fine, he's not being asked to pay that fine. His dismissal or his removal from the city council sort of terminated that action. So just to be clear, is that a concession on the part of the city that it will not be sought? Correct. Yes, Your Honor. But he was removed from office in part based on his failure to pay the fine, right? So there were consequences that were attached to his failure. So it's not as if the city just decided we don't care about the fine. They said, well, actually, we want you to pay the fine, and because you haven't done it, we're kicking you out of the city council. Yes, Your Honor. I understood Judge Nardini's question to be about whether the city was continuing to pursue that. That's right. A much more limited question, just to understand what's the current state of play, was my only question. Sure, and I would note that with respect to the charge that involved the $15,000 fine in 2020, there were also other allegations against him. Of course, there was the kickback, and then there was the gender disability discrimination against a staff member. Can I ask about the due process question? So you say that he had got due process because he got to speak at the final hearing when he was removed from office. But he alleges in the committee hearings or the procedures that led up to that expulsion, he didn't get to cross-examine witnesses or participate fully in the proceedings. By the time you get to the expulsion, haven't you already developed all the evidence and so on? Why should we conclude that he doesn't have any kind of due process right to participate in the development of the evidence against him as opposed to just he gets to speak at the very end when they make the final decision? Well, Your Honor, it was his decision. He elected to not participate in the 2019 disciplinary hearings and to not present certain evidence as part of the 2020 hearings. He doesn't allege that he lacked notice of those hearings or that his counsel was able to attend all of those hearings. He himself attended the Ethics Committee hearings in 2020. And, of course, he was able to make a statement and defend himself before the full counsel, before the counsel took that action to remove him. But he was denied the opportunity to do that. He might very well be entitled to that. You're just saying he was afforded that opportunity. Yes, Your Honor. And chose not to participate. Correct, Your Honor. And he also availed himself of his rights under Article 78 to try to challenge the committee decision, to try to stop the committee decision. And those challenges were rejected by the state court. And in terms of what's actionable, so it is true that in Velez we said it's not actionable to other board members who tried to manufacture an accusation against another board member that they wanted to be removed. But he says – but here actually the other board members did have authority over him because they're part of the body that had the authority to remove him. So is it right that we should not pay any attention to his allegations that there are members of the city council who are manufacturing allegations, charges against him? Well, I think this court should follow its precedent in Velez and look solely to the vote of the full counsel with respect to whether that was the actionable or the objectable action here. But his – the allegations in his complaint are that only a handful of members, not even enough members to sway the vote and exclude him. So then if we have this hypothetical where a small number of members actually – let's say we credit his allegations that actually they manufactured the charges against him. I know you dispute that, but that's what he alleges. So let's say we credit those allegations. So if in fact what happened was some small number of members manufactured the charges against him, but then the whole body ends up believing them and they expel him on the basis of their belief that those charges were true, he has no claim. Is that right? I think that's right. I think that also – Because we only look at what the body did. I think that also strays significantly from the facts as alleged here. Well, he does allege that. He alleges that there were people who didn't like him and they pressured other staffers to make allegations against him. He does allege that the charges were false. He alleges that the charges were false. He has no explanation for how the State Department of Labor verified – They're not plausibly alleging that these charges were false. I think if there were – if he was making plausible allegations about the kind of witch hunt or conspiracy that he's alleging, that would be in a very different situation than we are here. Okay. Okay. We'll hear rebuttal. Just very briefly on the due process issue, since I don't think we've fully discussed that. He had an official obligation as a council member to attend a very, very significant rally, and he requested an adjournment, like of a week or something, and they said no. His lawyers were present, and they were told, you can't introduce evidence or cross-examine witnesses. So the idea that he waived – He could have done that if he was present, right? Well, I think we're departing from the record, but I know a lot more about what happened because of all the videos and all the documents. So if you want, I'd like to – I can depart from the record and say what I know happened, which is – Okay. I mean, is it in the official record of the proceeding? Why don't you just answer, and then we'll consider whether we should take it into consideration. What happened was they superseded the charges, and he requested that it be adjourned so that he could attend because he had 2,000 – That isn't the complaint, right, that he wanted – That part is in the complaint. Right. It can't be that the Constitution requires the city council to provide an adjournment so he could attend a rally. Oh, I think – I think that there is a constitutional issue here, Your Honor, because – and in fact, the city charter says you're entitled to reasonable notice and reasonable opportunity. The question here is, you know, he's got official responsibilities, and you're squeezing him, and so he's – What if he had a court hearing? Sorry? What if he had a court hearing? Would you say that the judge would have deprived him of due process if he said, I'd rather be at a rally? Well – I mean, that's ridiculous, right? So how does that translate into this situation? I guess I just don't – I don't see your argument at all. Okay. Well, then I'm glad that I got a chance to try and address that because – Answer my question. If he had a court hearing, would he have a right to say the district judge deprived me of due process because I wanted to come and make arguments, but I had a rally to attend instead? Would that have been stated a violation of due process? Answer my hypothetical first. Yes. That would have. It would not have violated due process.  It would not. Okay. So why is it different? What I would have violated due process is if he said, my lawyers would like to introduce evidence. My lawyers don't have a rally. My lawyers would like to cross-examine the witnesses. Okay. I didn't make an argument. Can I just go back to the Twitter post? Yes. So this counsel for the city said, well, it is an allegation of harassment, and even if it was about his viewpoint, it's in the context of many other allegations against him that were not about his viewpoint. So why does the one charge about the Twitter post show that the city counsel is disciplining him based on viewpoint? Well, intent, motive, these are complex, myriad, shifting things that all human beings have. And the law does not and cannot expect somebody to prove only one motivation for why somebody does anything and exclude all other possibilities. And that's not the standard on a motion to dismiss, summary judgment, JNOV. The question here is, has he raised enough of a question in your Honor's minds about whether or not what was really going on here was this or that? And for purposes of pleading, I think it's very clear that he's raised that question. And to put the burden on a pleader to exclude an affirmative defense, what I was hearing, is not consistent with the law. In fact, if they want to get in front of a jury and say, well, yeah, this was an illegal, impermissible motive, but we weren't really thinking about that, God bless them, because the jury will handle them for that. How would you, I'm just trying to think. Let's assume we were to agree with you or the district court had agreed with you, you survived a motion to dismiss, and you were at the point of a trial. Would you need to put on evidence in your view that a majority of the members of the council believed that they were voting in favor of these charges based on charge number five? The one that you allege involves retaliation. No, because the evidence is not just limited to that one piece of activity. Okay, because you also argue that the other ones were manufactured as a matter of retribution. And, I mean, just, I mean, the whole process is mind blowing to me, excuse me. Let's say the reason why he had a plausible claim was because there was the charge that does seem to be based on his viewpoint, and that was the impermissible motive. What would you have to prove at trial to prevail on a claim that charge five showed that the city council suspended him based on viewpoint? Well, I mean, if you just isolate one thing, I think the jury would probably say that's not enough. But I don't isolate that one thing. I think what you've got here is a long train of events that establish animus.  To the media. The council's purpose, and that would allow you to get more discovery, and you might be able to show something else that informed the rest of the charges, is that what you're saying? Well, I'm saying that plus a lot more. What I'm saying is that, I mean, Council Member Van Bramer stood up in front of the New York City Council and said we are voting to exclude this guy because of his detestable comments about homosexuality. I don't know what else do I need to do. I mean, it's a video tape, frankly. If you were to survive on a 12B6, would you be asking to depose every member of the city council at the time? Well, I'm serious about this. Absolutely not. To try to figure out which of the charges motivated you to vote in favor. So then you would then presumably make the argument, if they said, well, I voted based on charge five, you would say, great, that's a checkbox for me. I'm totaling up hoping to get a majority who voted in favor of a charge that I allege is a retaliation for his first amendment. And then would you be asking, and as to the other charges, did you believe those charges to be true? Or did you believe them, or do we now have evidence from you leading you that you ought to have known that these were, in your view, trumped up charges? I mean, is that really how you have to prove this? Is deposing every member? What I have to prove is that the individual defendants were acting with an impermissible motive. And they set in motion, as tort features, a series of events that was very likely to lead to the result here. Which is that you destroy somebody in the media, you label him a criminal, you label him a sexual harasser, completely made up, and then you put before a political body the question about whether or not this sexual harasser and this criminal should be removed. All I need to do to prove liability is to show that these tort features set in motion a series of events that led to a foreseeable consequence. Thank you. We'll take the matter under advice.